## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| HERMAN DEWAYNE CARGILL, III, | ) |
| | ) |
| Petitioner, | ) |
| | ) **Case No. 2:13-CV-8032-SLB** |
| vs. | ) **Crim. Case No. 2:12-CR-0030-SLB-JEO** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on petitioner's Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [Motion to Vacate]. (Doc. 1; Crim. Doc. 27.)[1] Petitioner, Herman Dewayne Cargill, III, has filed the Motion to Vacate, pursuant to 28 U.S.C. § 2255, asking the court for relief from his 87-month sentence. (Doc. 1; *see* Crim. Doc. 21.) The court has construed the Motion to Vacate as asserting three grounds for relief:

> Ground One: Cargill is actually innocent of Count Two of the Indictment, alleging a violation of 18 U.S.C. § 924(c), because he did not have a gun during the carjacking;

> Ground Two: Ineffective assistance of counsel based on counsel's failure to file pretrial and/or discovery motions; and

---

[1]Citations to documents in the court's record in petitioner's Motion to Vacate appear as "(Doc. __)." Citations to documents in the court's record in the criminal proceedings against petitioner, Case No. 5:11-CR-00102-SLB-JEO, appear as "(Crim. Doc. __)." Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

Ground Three: Prosecutorial misconduct based on the U.S. Attorney's failure to prove he had a gun during the carjacking.

(*See* doc. 1 at 3-4.)[2]  For the reasons stated below, Cargill's Motion to Vacate is due to be denied.

# I. BACKGROUND

On February 1, 2012, the Grand Jury returned an Indictment against petitioner Herman Dewayne Cargill, III, and his co-defendant Jemaris Cortez Gosha.[3]  (Crim. Doc. 1.)  The Indictment charged Cargill with carjacking in violation of 18 U.S.C. § 2119 [Count One] and  using and carrying a firearm during and in relation to a crime of violence – carjacking – in violation of 18 U.S.C. § 924(c)(1)(A) [Count Two].  Gosha was charged only under Count Two because, according to the Government, he had entered a guilty plea in state court to a charge of robbery arising out of the carjacking at issue in this case.  (*See* doc. 6 at 5 ["Both defendants were initially charged with Robbery, First Degree, in State court.

---

[2]Cargill appears to allege that he is entitled to relief because the Government did not prove he was prohibited from owning a gun pursuant to Alabama law.  (*See* doc. 1 at 4 [Cargill alleges, "The charges under 18 USCS § 924(c)(1)(A)(ii) should be dismissed because Movant was not charge[d] under Ala. Code § 13A-11-72(a);" § 13A-11-72(a) provides that certain individuals are prohibited from owning or possessing as firearm.].)  A violation of § 924(c) does not require proof that the gun used in a violent felony was unlawfully possessed.  *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999)("To prove the charged § 924(c)(1) violation in this case, the Government was required to show that respondent used a firearm, that he committed all the acts necessary to be subject to punishment for . . . [ ] a crime of violence [ ] in a court of the United States, and that he used the gun "during and in relation to" the [crime of violence].").

[3]Cargill alleges that the Indictment in this case was not signed.  (*See* doc. 1 at 8.)  The signed Indictment was filed under seal.  (*See*  Crim. Doc. 1-1.)

Defendant Gosha pleaded guilty to that charge prior to the Federal Grand Jury indictment being returned in this case, so the Federal indictment charged Cargill with carjacking, and it charged both defendants with using a firearm during the carjacking."].)  The Indictment charged:

On or about the 22nd day of August, 2011, in Jefferson County, within the Northern District of Alabama, the defendant,

**HERMAN DEWAYNE CARGILL, III**,

together with an individual known to the Grand Jury, with the intent to cause death and serious bodily harm, did knowingly take a motor vehicle from the person and presence of another by force and violence and by intimidation, said vehicle being a BMW X5, which had been previously transported, shipped, and received in interstate commerce, in violation of Title 18, United States Code, Section 2119.

. . .

On or about the 22nd day of August, 2011, in Jefferson County, within the Northern District of Alabama, the defendants,

**HERMAN DEWAYNE CARGILL, III and**
**JEMARIS CORTEZ GOSHA,**

did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that being, Carjacking, as charged in Count One of this indictment, in violation of Title 18, United States Code, Section 924( c)(1 )(A).

(Crim. Doc. 1.)

Cargill was arraigned on February 16, 2012.  Shortly thereafter Magistrate Judge Ott entered a Scheduling Order and the court's Standing Discovery Order.  (Crim. Docs. 11, 12.) The Discovery Order provides that the Government "permit the defendant to inspect and

copy" certain documents that "are within the possession, custody, and/or control of the government, or the existence of which is known or by the exercise of due diligence may become known to the attorney for government." (Crim. Doc. 12 at 1-2.)  The Government alleges that "No documents [were] withheld in this case." (Doc. 6 at 11-12.)  The case was set on the trial docket of April 2, 2012. (Crim. Doc. 11 at 1.)  However, prior to that date, the court was notified that Cargill wished to plead guilty; a change of plea hearing was set for March 26, 2012.

On that day, after placing Cargill under oath, the court engaged in the following discussion with Cargill and counsel:

THE COURT:  Mr. Cargill, I want you to listen carefully to what the Assistant U.S. Attorney is going to say.  He is now going to outline for you and for me briefly certain of the facts he would expect the government to prove should this case proceed to trial.

If while he is speaking he says anything that is not true or that you do [not] believe the government can prove, I want you to interrupt him and let me know.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Mr. Weil.

MR. WEIL [Assistant United States Attorney]:  . . .

. . .

. . .  On August 22nd at about 5:00 o'clock in the morning, two males followed the victim to a Birmingham, Alabama hotel as she left her place of employment, which is The Palace.  After the victim parked and waited in her vehicle, which is BMW X5, the males rushed up to the victim, demanded her

money, her purse, her cell [phone] and her car keys and ordered her to exit the vehicle.

According to the victim, both of the males were armed with handguns and threatened to shoot her if she did not heed their demands.

THE COURT:  He's shaking his head no.

THE DEFENDANT:  No.

THE COURT:  What's not true?

THE DEFENDANT:  About both of us having guns.

THE COURT:  Who had a handgun?

THE DEFENDANT:  Gosha.

THE COURT:  And you say you did not?

THE DEFENDANT:  No, ma'am.

MR. WEIL:  The victim said they both had handguns.  He has maintained from the beginning that he didn't have a handgun.  Gosha stated that [Cargill] had the handgun, and that Gosha didn't have the handgun.

THE COURT:  And the victim says they both had handguns?

MR. WEIL:  They both had handguns.  So the evidence we would present –

THE COURT:  Go ahead and finish, and I'm going to come back and talk to him in a minute.

MR. WEIL:  Regardless –

THE COURT:  Well, under an aiding and abetting theory, he could be found liable even if he –

MR. O'KELLEY [Cargill's Counsel]:  That's correct.

5

THE COURT:  But I will explain all that to him in a minute.  Mr. Gosha says [Cargill] had the handgun, not Mr. Gosha?

MR. WEIL:  Right.

THE COURT:  Go ahead.

MR. WEIL:  When he was first interviewed.  I'm not sure what his position is now.

THE COURT:  I can't remember what [Gosha] said [the] other day.  He pled guilty to that count.  Go ahead.

MR. WEIL:  So after being threatened by these two individuals, one of which at least had a gun, the victim complied.  And one of the robbers fled in her vehicle, and the other robber fled from the scene in the Ford Expedition that they had driven to the scene of the crime.  That happened to be Mr. Cargill.

The victim immediately called the police, described the assailants and the vehicles, and a be-on-the-look-out was placed over the police radios.  Within approximately a half hour, a vehicle matching the description of the Expedition was stopped by the police.  This defendant, Cargill, was driving that vehicle.

At that time, he gave conflicting information to the police regarding his name and date of birth.  The victim was brought to the scene of the traffic stop, and she positively identified this defendant as one of the assailants and the vehicle as being used in the robbery.

They also seized from this defendant $420 of the $500 that was stolen from the victim.  They also discovered that the Expedition that he was driving was registered to the grandfather of the co-defendant, Mr. Gosha.

So they arrested Mr. Cargill.  He was read his Miranda rights.  After waiving his Miranda rights, he admitted that he had participated in the carjacking along with Defendant Gosha.  He first stated that Gosha forced him to commit the crime and that Gosha was the only one with the firearm.

6

A photo lineup was shown to the victim, and she positively identified Defendant Gosha as the other assailant in the carjacking. The victim reiterated at that time that both defendants possessed firearms, and both of them threatened her during the robbery/carjacking.

The next day on August 23rd, the co-defendant, Mr. Gosha, voluntarily came down to the police station. And after he waived his Miranda rights, he too confessed to the robbery and carjacking. He also admitted he had filed a false police report on August 22nd claiming that his Expedition had been stolen from him, and then he actually led the investigators to the stolen BMW that he had placed somewhere else. So he actually took them and they recovered the stolen BMW.

When the police allowed defendant's grandfather, who was the actual owner of the vehicle, to attain the Expedition from the towing company, they searched it before they released it to him, and they found underneath the front passenger seat a Jennings nine millimeter pistol under that front passenger seat. Presumably, that's one of the guns at least that was used during the carjacking.

Finally, we would show that the car that was carjacked, the victim's vehicle, the BMW X5 was manufactured outside of Alabama, thereby providing the interstate nexus to the federal carjacking.

THE COURT: And, again, the victim said they both had guns, and then Mr. Gosha said it was this defendant that had the gun; is that right? Is that what your evidence would be?

MR. WEIL: I'm not sure what Mr. Gosha says now. That's what he said when he was first interviewed.

THE COURT: Mr. O'Kelley, I should know this, and I just want to make sure I'm right about this before I say this to him, *he could be found liable under an aiding and abetting theory under Count Two?*

MR. O'KELLEY: *We agree with that*.

THE COURT: You agree with that? Do you agree with that also?

MR. WEIL: Yes.

7

THE COURT:  Of the substantive offense.

MR. WEIL:  Absolutely.

THE COURT:  [To Cargill:]  Let me explain this to you, because I want you to understand the law with regard to this before you decide about pleading guilty.  You say you didn't possess the firearm.  And under the law, there's a statute, 18, U.S. Code, Section 2, which is called aiding and abetting.

And let me explain it to you in a different way.  Let's say there's a bank robbery, and a person drives the people – he knows that they're going to rob the bank.  He's going to park around the corner from the bank for the people who are robbing the bank to come to later.

His friends go inside to rob the bank.  They run around the corner get in the car with him – or let's say he even drives off, he can be found liable for bank robbery under an aiding and abetting theory even though he didn't go in the bank.  Even though he didn't actually rob the bank, he was aiding and abetting the people who robbed the bank, and he could even be found liable of a gun violation if they had a gun when they walked in the bank.

Do you understand what I just said to you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  So if the jury believes beyond a reasonable doubt, if the government proves to them that you, in fact, were involved in this carjacking and if they believed – let's say if you decided to testify and said, I didn't have the gun; but, if they believed you were involved in that carjacking, you could be found guilty of Count Two under an aiding and abetting theory if they find that your co-defendant had the gun.

Do you follow what I'm saying?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  *So, basically, the government would not have to prove at trial beyond a reasonable doubt that you, in fact, even though it's charged that way, that you, in fact, had the gun, if the jury believed, number one, you*

8

*committed Count One and if they believed your co-defendant had the gun.
Do you see what I'm saying?*

THE DEFENDANT: *Yes, ma'am.*

THE COURT: *Now, I don't want you to plead guilty to Count Two
unless you are, in fact, guilty of Count Two under either the theory of aiding
and abetting, in other words, that your co-defendant had a gun* – do you say
he had a gun?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. *Or, in fact, if you had a gun. So do you wish
to plead guilty to both Counts One and Two?*

THE DEFENDANT: *Yes, ma'am.*

THE COURT: And you understand what the government would have
to prove?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. *And other than what you just said, the only part
that you would change about what they said is you didn't have the gun, your
co-defendant had the gun; is that right?*

THE DEFENDANT: *Yes, ma'am.*

THE COURT: All right. Mr. Cargill, you are not required to enter a
plea of guilty to Count[s] One and Two of the indictment, and you are free at
this time to withdraw your plea of guilty and re-enter a not guilty plea.

Have you heard anything here today that causes you to want to
reconsider your decision to enter a plea of guilty to Counts One and Two?

THE DEFENDANT: No, ma'am.

THE COURT: Do you still desire to enter your plea of guilty to those
counts?

9

THE DEFENDANT:  Yes, ma'am.

THE COURT:  The court finds your pleas of guilty are freely and voluntarily entered and the requisite factual basis for the pleas exist.  The pleas of guilty are accepted by the court.

(Crim. Doc. 28 at 14-22 [emphasis added].)

At the sentencing hearing the following occurred:

MR. O'KELLEY:  I would like to speak initially, if I could, Your Honor.  As the court is aware, I did file a sentencing memorandum with a motion for a variance.  And while I realize that, without the benefit of a 5K, which I will address in just a second, the court cannot do anything with regard to the seven year sentence, but I think the court is empowered to do something with regard to the sentence called for in Count One, which is the 33 to 41 month sentence should the court deem a variance proper.

Herman Cargill, I really can't say anything other than what I said in the memo and in the basis of my motion.  He's 19 years old, Your Honor.  He has never in his life been arrested until the incident that took place here.

THE COURT:  Explain to me why they did this.  What was this about, I mean, needing money for something?  What was the reason that they did it?

MR. O'KELLEY:  I do not think that – I think it was an alcohol induced, you know –

THE COURT:  They had a car though.  It's not like – what was the reason?

MR. O'KELLEY: I understand. I can't – I don't know.  It was his birthday, and they go out and they do something incredibly stupid.  They do something incredibly dangerous, and I don't know that anybody can really explain why these two did it in the middle of the night.

I referred to it as a gentlemen's club in the memo.  It was a strip joint, and it just escalated to something that never, ever should have happened, and he is extremely remorseful.  I would ask the court to consider his age, the fact that he graduated timely from high school.  He actually walked and received

a diploma with the other members of his class; i.e., he completed 12 years and got a diploma.

While at Jackson Olin, he was a football player and a rather good one from what I understand. He wound up blowing his knees out. But he's had – he honestly has had a tough life. His mamma died when he was eight. His father has been incarcerated by the State of Alabama for most of his life. . . .

And I represent to you, even though we pled blind, Mr. Weil and I discussed the potential for a 5K. And even without a plea agreement, what they were looking for, quite frankly, is some of the marshal's service approached Jim and he approached me, they were looking for this man's uncle, who he hasn't seen in a long time. And, of course, if he could help them in getting his uncle, who may be a fugitive, then the potential for a 5K was there, but he didn't know where his uncle was. And I even asked him as late as this morning if there was any way that he had ascertained any knowledge of his uncle and he said he just hasn't heard. So we did explore that.

Sentencing, Your Honor, in these sentencing memorandums, we put a lot of stuff in there about the law. Well, you know all of that, and maybe we ought to leave that stuff out and just get to the facts as they are about our clients, because what we're looking for is a sentence that is sufficient but not greater than necessary.

And realizing that there's nothing I can do with the seven years, I'm asking the court to vary downwardly based on his youth and his background and the fact that he's had no arrests. He doesn't have any drug issues. And I'm just asking you to vary downward to an eight year sentence, 84 months on Count Two, the seven year sentence and then vary downwardly from the low end of 33 to 12 on the other.

THE COURT: Mr. Cargill, is there anything you would like to say before sentence is imposed?

THE DEFENDANT: I just apologize for what happened about the situation.

(Doc. 29 at 5-7.)

When asked by the court to explain what happened, Cargill stated only that he was drunk, that he did not remember discussing the carjacking with Gosha before it happened, and that he had "no idea" what he was thinking. (*Id*. at 8.)  He did not tell the court that Gosha forced him to participate in the carjacking. (*See id*. at 8-9.)  The court imposed a custodial sentence of 87 months – 3 months as to Count One and the mandatory minimum of 84 months on Count Two. (*Id*. at 14; see also Crim. Doc. 21.)  Cargill did not appeal his conviction and/or sentence.

Cargill timely filed a Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. (Doc. 1; Crim. Doc. 27.)

## II.  DISCUSSION

### A.  SECTION 2255 STANDARD

This court has held that the habeas petitioner "has the burden of showing he is entitled to relief from his sentence pursuant to 28 U.S.C. § 2255.  Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Bryant v. United States*, No. 5:07-CR-0205-SLB-PWG, 2014 WL 519619, at *7 (N.D. Ala. Feb. 10, 2014)(quoting *Richards v. United States,* 837 F.2d 965, 966 (11th Cir. 1988) and citing *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014) and *Greene v. United States,* 880 F.2d 1299, 1301 (11th Cir. 1989))(internal quotations and citations omitted).

12

When a habeas petitioner has been convicted based on a plea of guilty and he makes "statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" *Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014)(quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)(per curiam)). His "solemn declarations in open court carry a strong presumption of verity." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Also his guilty plea waives all but certain, well-defined claims:

> After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise [1] jurisdictional issues, *United States v. Patti,* 337 F.3d 1317, 1320 (11th Cir. 2003), *cert. denied,* 540 U.S. 1149, 124 S. Ct. 1146, 157 L. Ed.2d 1042 (2004), [2] attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); *Wilson v. United States,* 962 F.2d 996, 997 (11th Cir.1992), or [3] challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir.1986). In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. *Mary v. Johnson,* 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. *Mary,* 467 U.S. at 509, *quoting, Brady v. United States,* 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. *Mary,* 467 U.S. at 509. *See also Santo Bello v. New York,* 404 U.S. 257, 92 S. CT. 495, 30 L. Ed. 2d 427 (1971).

*Caceres v. United States*, No. 13-22901-CIV, 2014 WL 5761112, at *8 (S.D. Fla. Nov. 5, 2014). "The subsequent presentation of conclusory allegations unsupported by specifics is

subject to summary dismissal, as are contentions that in the face of the record are wholly

incredible." *Blackledge*, 431 U.S. at 74.

## B.  ACTUAL INNOCENCE OF § 924(c) COUNT

Grounds One and Three of the Motion to Vacate are based on Cargill's claim that he

is "actually innocent" of Count Two, brandishing a gun during a crime of violence, because

he did not have a gun at the time of his arrest.  (Doc. 1 at 3-4.)[4]  However, during the plea

colloquy, he admitted that his co-defendant had a gun and he admitted he could be found

guilty of this charge for aiding and abetting his co-defendant in the car-jacking even if he did

not have a gun.[5]  (Crim. Doc. 28 at 16, 19-22.)  Cargill alleges no facts that would show that

---

[4]Ground One alleges that Cargill was actually innocent because "there [was] no weapon seized after his arrest," (doc. 1 at 3 [alteration in original omitted]), and Ground Three alleges misconduct by the Government based on failure to submit evidence that Cargill did not possess the gun during the carjacking, (*id*. at 4, 6-8).

[5]With regard to aiding and abetting, the Supreme Court has held:

. . . An active participant in a [violent felony] has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun.  In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope – that the plan calls not just for a [violent felony], but for an armed one.  In so doing, he has chosen . . . to align himself with the illegal scheme in its entirety – including its use of a firearm.  And he has determined . . . to do what he can to make that scheme succeed.  He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others.  He may not have brought the gun to the [violent felony] himself, but because he took part in that deal knowing a confederate would do so, he intended the commission of a § 924(c) offense – *i.e.,* an armed [violent felony].

*Rosemond v. United States*, 134 S. Ct. 1240, 1249, 188 L. Ed. 2d 248 (2014)(internal citations, quotations and original alterations omitted).

these statements, made under oath at the plea colloquy, were false.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014)(quoting *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988)(per curiam)).

Therefore, the Motion to Vacate will be denied as to Grounds One and Three.

## C.  GROUND TWO – INEFFECTIVE ASSISTANCE OF COUNSEL

### 1.  Alabama Law

Cargill contends that he was denied effective assistance of counsel because –

Counsel['s] performance was poor according to the BOP Criminal Defense Techniques Law computer, the defense counsel['s] representation was poor, and it [fell] below the standards of the Canon Codes on Professionalism where no jurist of reason would have found the federal crime absent proof of Ala. Code 1975 §§ 15-9-20/15-9-65?[6]

(Doc. 1 at 3-4.)

The court disagrees with Cargill's statement that he could not be found guilty of a *federal* crime absent proof that *Alabama* law was met.  Moreover, the two statutes he cites concern extradition – § 15-9-20 sets forth the definitions used in the Code and § 15-9-65 concerns reimbursement of "fees and expenses of sheriff when accused returns without requisition."  Ala. Code §§ 15-9-20, 15-9-65.  Neither statute has any relevance to these proceedings.  Cargill's crimes were committed in Jefferson County, Alabama, and he was

---

[6]These sections of the Alabama Code relate to extradition and the procedures for the return of individuals to Alabama for prosecution.  Section 15-9-20 provides definitions for certain terms used in the code and section 15-9-65 allows the county sheriff to request fees and expenses when the wanted individual consents to return to Alabama.

arrested in Jefferson County, Alabama. Therefore, the court finds Cargill's assertion that "no jurist of reason would have found the federal crime absent proof of Ala. Code 1975 §§ 15-9-20/15-9-65" to be devoid of any legal merit.

### 2. Pretrial Motions

Also, because Cargill entered a knowing and voluntary plea of guilty, his "claim of ineffective assistance of counsel" is barred except "to [the] extent the alleged ineffectiveness bears upon the voluntariness of the plea itself." *Lopez v. Sec'y, Dep't of Corr.*, No. 8:13-CV-1998-T-33AEP, 2015 WL 1880757, at *9 (M.D. Fla. Apr. 24, 2015)(citing *Hill v. Lockhart*, 474 U.S. at 52, 53-59 (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); see also *Caceres*, 2014 WL 5761112, at *12 ("Caceres attempts to undermine the lawfulness of his guilty plea by challenging the pre-plea representation received from trial counsel, alleging that his lawyer failed to conduct a proper investigation into the facts of the case, file various pretrial motions and present various defenses. Such allegations do not relate to the voluntariness of the plea.")(citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992) (per curiam).

The well-established law provides, "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668,

690 (1984).  In his Motion to Vacate, Cargill identifies only one omission; he contends that

his "Defense counselor fail[ed] to file proper pre-trial motions."[7]  (Doc. 1 at 3.)  Such error,

---

[7]Specially, Cargill contends that certain records "were not made a part of the charges alleged by the [Government]," including:

1.     Cargill's Alabama Uniform Arrest Report Dated 8/22/2011, 5:30 A.M.; See Section 40 Armed? [N]; #000017;

2.     [Victim's allegation] that there were (2) Glock hand-Guns involved on 8/22/2011 5:10A.14.  [Cargill had no weapon]? #000015;

3.     8/22/2011, 5:30A.M. Arrest Narrative by [Officer Wald] about the arrest of Cargill/Carrington from the response of the robbery; #000018;

4.     On 8/23/2011, 10:10 J. Rodriguez-399-Follow-Up Supplement, at paragraph-5, Gosha threatens Cargill before the Robbery and insist[s] that he did not have a weapon, the arrest report affirms; #000007;

5.     On 8/24/2011, 11:15 J. Rodriquez-399-Follow-Up Supplement, at The Government overlooked the facts that Herman Dewayne Cargill, III, had employment (40) Hours a week, at Birmingham Civil Rights Institute with a Monthly Income of $1,191.67 and had been working 7.0 Months, and the fact that Gosha was complaining about being broke and trying to take care of his child paragraph-4-at exhibit #4-Cargill #000007; His story [carries] more weight than Gosha and he informed the officers that he had only $20 dollars of the victim[']s money, Cargill offer to show the officers payments receipts from his employment, but was denied to present them; this is common in most of these type of crimes; Cargill did not have a motive;

6.     Summary 8/24/2011, 08:58; Cargill Discovery #000011, after Cargill was arrested on 8/22/2011 in exhibits 4 & 5 Cargill did not have a weapon, and none was recovered on 8/22/2011 The Summary Report Gosha knew exactly what kind of gun they had with them and the gun was recovered in the vehicle he brought to the scene.  The facts that Cargill stated that he did not want to take part in the robbery, and the fact that Cargill had active employment, no jurist of reason would have

found him guilty as a willing participant if defense counsel would have filed proper defense pre-trial motions; #000011 Cargill Discovery;

7.   Defense Counsel could have presented Homewood Police Dept. Advice of Adult Miranda Warning-Consent by his client Herman Cargill, [dated] 9/22/2011 to show that his client was a victim of a crime he was willing to not take part in, and with the fact that [no weapon] was recovered on his arrest "NO" Federal Crime existed; Cargill Discovery #000021;

8.   Photo Lineup dated 8/22/2011; where victim pick Gosha #5, if Cargill was place in a Lineup before the victim was brought to the Traffic-stop arrest even a weapon was not found[ ] would the victim pick Cargill as the Robber?  Defense counsel services fell below the codes of canon; Cargill Discovery #8264568;

9.   Discovery Cargill #000050, Copy of Alabama Judicial Information System Case Summary District Criminal CASE: DC 20/1 007927, State of Alabama vs. Gosha Jemaris, DC 9181, Co-D Herman Cargill, 11 7918, "waived 10/17/20/1; No charges from 8/22/2011;

10.   Copy – Cargill Discovery from the District Court of Alabama Jefferson-Birmingham, Felony Sentencing Order One & Two of Jemaris Gosha #000052;

11.   Copy of Electronically Filed 9/15/2011;11:31 AM; DC-2011-007-927, Circuit Court of Jefferson County, Alabama, Anne-Marie Adams, Clerk, the Case against Cargill 8/22/2011 was resolved after ["NO"] weapon was found in the Vehicle when he was arrested, and Jemaris Gosha admitted to the weapon during his in Cargill Discovery #000011; Pages One & Two;

12.   Copy of FBI Unclassified Report withheld by Defense Counsel and the Government dated 8/23/2011 Cargill Discovery #000005, & 000006 on Cargill's arrest date 8/22/2011 ["NO".] weapon was found; This report was drafted by Keeler Harold S:hsk? [*Harold S. Keeler*]

13.   Copy of FBI Unclassified Report withheld by Defense Counsel and the

occurring before the guilty plea, is waived by Cargill's knowing and voluntary guilty plea.

---

Government dated 9/9/2011; remember Jemaris Gosha was sentence[d] 6-days later, it was the Government who withheld the Homewood Police Dept. arrest report of Cargill dated 8/22/2011 where in paragraph-40-Armed [X] NO; Also Drafted by [Harold S. Keeler]; was there a federal crime proven under Article I, Section-8, Clause-17, or authorize defined under <u>Adams v. United States</u>, 319 U.S. 312 (1943); § 748 - Federal Criminal Jurisdiction, did the indictment contain FRCVP-44(a), FRCRP-6(f), 54(c), 28 USCS §§ 631-639? Cargill D-#000001, 000002, 000003, & 000004; Four pages;

14. Four pages Pretrial Services Report describing Cargill's Employment History/Financial Resources, which further proves that Herman Dewayne Cargill, III did not have a motive to ROB anyone and expressed his feelings about not robbing the victim, if not for Jemaris Gosha telling him he was going to be shot if he did not participate, base on the arrest report Cargill did not have a weapon, and the weapon was discovered when the vehicle was returned to his Grand-father the court must dismiss the indictment, conviction, sentence and 3 years SRT base[d] on the violation of the "fruits of the poisonous tree doctrine";

15. Copy of Two pages Case 2:12-cr-00030-SLB-JEO *SEALED* Document 1 Filed 02/01/12; almost 5½ months after Gosha was sentence and 5½ months past the time for the return of the indictment FRCRP-6(f), 54(c), 28 USCS §§ 631-639, no magistrate, no judge, and no foreman signature on the indictment[.]

(Doc. 1 at 7-8.) Nothing in Cargill's submissions demonstrates that these documents were not disclosed to defense counsel. Indeed, it appears that Cargill obtained these documents from defense counsel. (*See id.* at 16-39.) In response tro Cargill's Motion,m the Government contends, "Cargill complains that the Government withheld information, and then he cites examples by listing the documents that WERE supplied in the discovery. No documents have been withheld in this case." (Doc. 6 at 11-12 [emphasis in original].) Cargill has offered nothing to rebut the Government's contention.

Nevertheless, this claim fails on its merits because Cargill has not, and cannot, complain that counsel's failure to file pretrial motions caused him prejudice.

> To prevail on his claim [of ineffective assistance of counsel in violation of] the Sixth Amendment, [Cargill] must establish that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985)(quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2065, 2068, 80 L. Ed. 2d 674 (1984))(internal quotation marks omitted). . . .
>
> "In the context of guilty pleas, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58-59, 106 S. CT. at 370. "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky,* 559 U.S. 356, 372, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).

*Diveroli v. United States*, 803 F.3d 1258, 1262-63 (11th Cir. 2015). "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59.

Cargill contends his counsel should have discovered and argued the fact that he did not use a gun during the carjacking. However, this "fact" was discussed by the court with Cargill at the plea colloquy. Everyone, including Cargill and the court, was aware that

Cargill had maintained he did not have a gun during the carjacking, he did not use a gun during the carjacking, and he did not have a gun when he was arrested.[8]  Nevertheless Cargill testified at the plea colloquy that he was guilty of Count Two of the Indictment, charging the use of a weapon during the carjacking, either because he had a gun or because Gosha had a gun, in which case he was guilty of aiding and abetting the gun crime.  He does not allege that but for his counsel failing to file pretrial motions – to obtain discovery the Government had provided without a motion and which contained facts of which Cargill himself was aware – he would not have pleaded guilty and would have insisted on going to trial.  Moreover, the court finds Cargill has not alleged facts sufficient to show a decision to go to trial would have been rational under the circumstances.

Thus, the court finds that Cargill has not established that he is entitled to relief from his conviction and sentence based on ineffective assistance of counsel.

---

[8]The court notes that Cargill's statements are not undisputed.  In the victim's statement, she said that both Cargill and his co-defendant had guns.  Also, a gun was found in the vehicle Cargill was driving.  The vehicle, which was in police custody from the time Cargill was stopped after the carjacking until searched by police, was the vehicle Gosha and Cargill had driven to the site of the carjacking.  Gosha, who Cargill contends had the gun during the carjacking, did not return to this vehicle after the carjacking.   Therefore, the weapon found in the vehicle could not be the weapon Gosha used in the carjacking.  The reasonable inference from this evidence is that this gun was the one the victim alleged Cargill had used during the carjacking.

## CONCLUSION

Based on the foregoing, the Motion to Vacate filed by petitioner Herman Dewayne Cargill, III, (doc. 1), is due to be denied.  An Order denying the Motion to Vacate will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).   And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2)(emphasis added).   To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

22

Cargill has not demonstrated that he was denied any constitutional right or that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further. Therefore, issuance of a certificate of appealability is not warranted in this case.

**DONE** this 3rd day of February, 2016.


SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE